**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION**

STEPHEN RUSIECKI,

    Plaintiff,                                    CASE NO. 06-CV-14023

v.                                                DISTRICT JUDGE GERALD ROSEN
                                                MAGISTRATE JUDGE CHARLES BINDER

JAN TROMBLEY, Warden,
Saginaw Correctional Facility,
FAYE TAYLOR, Prisoner
Accounting, ALLAN KELLY,
Assistant Resident Unit Supervisor,
JEFF STOLTENBERG, Resident
Unit Officer, JOHN DOE, JANE DOE,

    Defendants.
    _____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
ON DEFENDANTS' MOTION TO DISMISS FOR FAILURE
TO EXHAUST ADMINISTRATIVE REMEDIES**
(Dkt. 23)

**I.**     **RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants' motion to dismiss be **GRANTED** and that this case be dismissed in its entirety.

**II.**     **REPORT**

     **A.**     **Introduction**

Plaintiff Stephen Rusiecki is currently incarcerated by the Michigan Department of Corrections ("MDOC") at its Ojibway Correctional Facility in Marinesco, Michigan. The events that are the subject of the instant complaint occurred while Plaintiff was incarcerated at the

Saginaw Correctional Facility ("SRF").[1] This *pro se* civil rights case was filed on September 12, 2006, an amended complaint was filed on February 5, 2007 (Dkt. 10,) and by order of U.S. District Judge Gerald E. Rosen, this case was referred to the undersigned Magistrate Judge for general case management on May 24, 2007. (Dkt. 25.) All Defendants, except for the John and Jane Doe Defendants, have joined in the motion to dismiss filed on May 10, 2007. (Dkt. 23.) Plaintiff has responded to the motion (Dkt. 26,) and Defendants have replied. (Dkt. 27.) Upon review of the documents, I conclude that pursuant to E.D. Mich. LR 7.1(e)(2), these motions are ready for Report and Recommendation on the pleadings without oral argument.

**B.     The Complaint**

Plaintiff states that while incarcerated at the Saginaw Correctional Facility, Plaintiff's incoming mail from the law firm of Kendricks, Bordeau, Adamini, Chilman & Greenlee, P.C., was "opened outside of Plaintiff's presence contrary to Plaintiff's long standing written notice for special handling of legal mail." (Am. Compl., Dkt, 10 at 5, ¶ 1.) In addition, he avers that on August 12, 2005, his incoming legal mail from the law firm of Beals, Hubbard, P.L.C., was again opened outside his presence. (*Id.* at 6, ¶ 2.) Plaintiff also alleges that he received a notice that he had incoming legal mail from the law firm of Brandt, Fisher, Alward & Roy, P.C., but that said mail was being rejected. (*Id.* at 6, ¶ 3.) On October 4, 2005, Plaintiff complains that mail from the

---

[1] I note that Plaintiff has filed several other civil rights actions in the federal district courts in Michigan which he accurately disclosed in his Amended Complaint. (Dkt. 10 at 2-3.) In the Western District of Michigan, Northern Division, No. 99-00023 was settled, No. 00-00094 was dismissed pursuant to 28 U.S.C. § 1915(A)(b)(1)(frivolousness or failure to state a claim) and 42 U.S.C. 1997e(failure to exhaust). In the Eastern District of Michigan, Southern Division, No. 04-70534 was summarily dismissed under 28 U.S.C. § 1915 (e)(2)(B)(failure to state a claim) and No. 06-10795 was dismissed pursuant to granting Defendants' motion to dismiss under 42 U.S.C. § 1997e(failure to exhaust). Under the PLRA's "three strikes" rule, 28 U.S.C. 1915(g), Nos. 00-00094 and 04-70534 would count as strikes. *Pointer v. Wilkinson*, 502 F.3d 369, 372, 377 (6th Cir. 2007). The Sixth Circuit has not addressed whether No. 06-10795, which was dismissed under Rule 12(b)(6) for failure to exhaust, may be considered a strike. *Id.*, citing *Thompson v. DEA*, 492 F.3d 428, 438 (D. C. Cir. 2007)(holding that if a complaint is dismissed "on a Rule 12(b)(6) motion or if it dismisses the complaint *sua sponte* and expressly declares that the complaint fails to state a claim, the dismissal counts as a strike.").

Schoolcraft County Clerk was also opened outside Plaintiff's presence and that a check in the amount of $4,222.49 was removed and placed in his inmate trust account on October 5, 2005. (*Id.* at 6-7, ¶¶ 4-7.) On October 6, 2005, Plaintiff alleges that he "presented four (4) disbursement authorizations (prisoner) to ARUS Kelly for authorization...[one of which was] in the amount of three thousand five hundred dollars ($3,500) to Attorney David M. Makled..." (*Id.* at 8, ¶ 9.) On October 13, 2005, Plaintiff learned that this $3,500 disbursement had not yet been received by his legal counsel so he "presented to ARUS Kelly a disbursement authorization (expedited legal mail-prisoner)...ARUS Kelly at this time refused to except [sic] and/or authorize said disbursement stating: 'I have been instructed by Warden Trombley that, I am not to resubmit any such disbursement.'" (*Id.* at 9-10, ¶ 10a.) Plaintiff further avers that other disbursements authorized on October 6, 14, and 19, 2005, were never processed and were eventually returned to him marked "VOID" or "NSF." (*Id.* at 10-11, ¶ 13.)

Finally, Plaintiff avers that on February 16, 2006, ten minutes after he requested grievance forms, he was called to the officers' station where Defendant Stoltenberg told him, "You can send those grievances to the Governor or, anyone else who you think might give a shit!" (*Id.* at 11-12, ¶ 15.) Plaintiff then requested to see the shift commander but Defendant Stoltenberg refused, Plaintiff searched for shift command and found Sergeant Koch who informed Plaintiff that he "didn't care what policy stated, nor, did he have to follow it. He then went on to tell Plaintiff that, Plaintiff was nothing but a little baby throwing a tantrum because he wasn't getting his own way." (*Id.* at 12, ¶¶ 16-19.) Later that day, Plaintiff alleges that when he requested proper spelling of Sergeant Koch's name for purposes of filing his grievance, Koch handed Plaintiff his name tag and told Plaintiff he would come to see Plaintiff later. (*Id.* at 12-13, ¶ 20-21.) On February 17, 2005,

Plaintiff was given a major misconduct ticket for "being insolent to staff" that had been written up the previous day. (*Id.* at 13, ¶ 22.)

Plaintiff avers that the above actions violated his attorney-client privilege, his privileged communication with the court, conspiracy to deprive him of his assets, impeded access to courts, retaliation, and illegal seizure of assets without due process. (*Id.* at 13-26.) Plaintiff requests injunctive, "[c]ompensatory damages in excess of twenty five thousand dollars" and "[p]unitive damages in the amount of five hundred thousand dollars" and any "other relief that this Court should deem appropriate." (*Id.* at 27.)

### C. Summary of the Arguments of the Parties

Defendants move for dismissal for failure to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a) as to the following specific grievances: (1) the claim against Defendant Trombley that she read his incoming legal mail on July 29, 2005, is not exhausted because Plaintiff failed to file any grievance in July of 2005; (2) the October of 2005 claims against Defendants Trombley, Taylor, and Kelly are not exhausted because Plaintiff filed only one grievance in October of 2005 and it was rejected because it raised multiple issues in violation of MDOC policy; (3) the four grievances filed against Defendant Stoltenberg on February 15-16, 2006, are not exhausted because although one alleged Defendant Stoltenberg issued a false, retaliatory misconduct on February 17, 2006, none of them alleged that any false, retaliatory misconduct was issued on February 2, 2006, as alleged in the instant complaint. (Dkt. 23, ¶¶ 6, 7, 8.)

Plaintiff responds by noting that the applicable MDOC policy directive did not provide that grievances failing to name specific individuals are defective. (Dkt. 26 at 11.) Plaintiff further argues that the grievances deemed unrelated by the Grievance Coordinator, regarding the opening of Plaintiff's mail, were related and have been exhausted. (*Id.* at 13-15.) Plaintiff further contends

that the retaliation claim against Defendant Stoltenberg was exhausted because the reference to February 2, 2005 in paragraph 39 is a clerical error and the correct date is listed in paragraphs 14 through 22. (*Id.* at 15-16.)

### D. Motion Standards & Governing Law

#### 1. Motions to Dismiss

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal where there is a failure to state a claim upon which relief can be granted. "The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). "In practice, 'a . . . complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'" *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). Accordingly, when deciding a dismissal motion, "[t]he court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief." *Cline v. Rogers*, 87 F.3d 176 (6th Cir. 1996) (citing *In re DeLorean Motor Co.,* 991 F.2d 1236, 1240 (6th Cir. 1993)).

"In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997) (quotation omitted) (emphasis added). This circuit has further "held that 'documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central

to her claim.'" *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

In this case, both Plaintiff and Defendants have attached MDOC grievance documentation and medical records to the complaint and motion to dismiss. They will be considered part of the pleadings under *Nieman* and *Weiner*, *supra.*

### 2. Exhaustion of Administrative Remedies

Prisoner civil rights cases are subject to the Prison Litigation Reform Act's ("PLRA") mandate that "[n]o action shall be brought with respect to prison conditions under § 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). To exhaust a claim, a prisoner must proceed through all of the steps of a prison or jail's grievance process, because an inmate "cannot abandon the process before completion and claim that he has exhausted his remedies." *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999). The Supreme Court held in *Woodford v. Ngo*, ___ U.S. ___, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006), that failure to "properly" exhaust bars suit in federal court. "Proper exhaustion" means that the plaintiff complied with the administrative "agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id*. at 2386.

The Supreme Court recently provided further clarification of the PLRA's exhaustion rule in *Jones v. Bock*, ___ U.S. ___, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007). The Court struck down the Sixth Circuit's procedural rule placing the burden on prisoners to plead and prove exhaustion in their complaint, holding instead that failure to exhaust is an affirmative defense. *Id.* at 921. The Court further held that "[t]he level of detail necessary in a grievance to comply with the grievance

procedures will vary from system to system and claim to claim, but **it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion**." *Jones,* 127 S. Ct. at 922-23 (emphasis added).

The Michigan Department of Corrections provides prisoners with a grievance procedure for bringing forward their concerns and complaints. *See* MDOC Policy Directive ("PD") 03.02.130 (eff. Dec. 19, 2003).[2] The MDOC's grievance procedure consists of steps that a prisoner must follow prior to filing a complaint in court, and each step is accompanied by a time limit. First, within two business days after becoming aware of a grievable issue, an inmate should attempt to verbally resolve the dispute with those involved. MDOC PD 03.02.13(R). If such an attempt is impossible or unsuccessful, the inmate must then submit a Step I grievance form within five days. MDOC PD 03.02.130(X). The grievance policy provides the following instructions regarding what information needs to be included in a grievance:

> The issues shall be stated briefly. Information provided shall be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). **Dates, times, places and names of all those involved in the issue being grieved are to be included.**

MDOC PD 03.02.130(T).[3]

The prison staff is required to respond in writing to a Step I grievance within fifteen days, unless an extension is granted. MDOC PD 03.02.130(Y). If the inmate is not satisfied with the response, or does not receive a response within fifteen days, he then must request a Step II appeal form within five days, and has an additional five days to submit it. MDOC PD 03.02.130(DD).

---

[2] The policy directive was superceded on March 5, 2007. However, since the December 2003 version was in effect at the time of the grievances at issue here, all references herein will be to that version.

[3] I note that the MDOC grievance policy referred to by the Supreme Court in *Jones v. Bock* was the November 1, 2000, version, *see Jones*, 127 S. Ct. at 916, which did not require inmates to include in their grievances the dates, times, places and names of all those involved. The policy directive at issue here – the December 2003 version – clearly requires this higher level of specificity.

7

Once again, if the inmate is dissatisfied with the response at Step II or does not receive a Step II response within fifteen days, he has ten business days to submit a Step III appeal to the Prisoner Affairs Section. MDOC PD 03.02.130(HH). The Step III response concludes the administrative grievance process.

### E. Analysis & Conclusions

Defendants assert that Plaintiff has failed to exhaust his administrative remedies with regard to the claims brought in his complaint. Defendants note that "Plaintiff pursued these grievances through all three steps of MDOC's grievance procedure. However, the grievances do not exhaust the issues and claims raised against the defendants in this action." (Dkt. 23 at 2.)

Defendant contends that Plaintiff's claim against Defendant Trombley for reading incoming legal mail from the Schoolcraft County Clerk regarding his father's estate on July 29, 2005, is not exhausted because "Plaintiff did not file any grievances in July 2005." (Dkt. 23 at 6; Am. Compl. ¶ 23.) Plaintiff does not appear to contest this argument. I note that not only did Plaintiff not "file" any grievances in July, but also none of the grievances reference an incident date in July. In addition, although paragraph 23 refers to the incident, the incident is not mentioned in the statement of facts of Plaintiff's Amended Complaint. Accordingly, I suggest this claim is not exhausted.

### 1. Grievance SRF-05-08-00996-15g ("996")

Grievance 996, filed August 19, 2005, describes an incident occurring on August 18, 2005,[4] where legal mail from the Brandt law firm was opened outside Plaintiff's presence. (Dkt. 26, Ex. 4; Am. Compl., Dkt. 10 ¶ 25.) Defendant contends that this grievance is not properly exhausted

---

[4] Defendants' brief states both the correct date and an erroneous date of October 18, 2005; the court assumes the October date is a mere clerical error. (Dkt. 23 at 6.)

8

because it fails to name Defendant Trombley. (Dkt. 23 at 7.) Defendant refers to MDOC PD 03.02.120 (T) which requires that "[d]ates, times, places and names of all those involved in the issue being grieved are to be included." Although Plaintiff notes that this was not required in the *Jones v. Bock* case, the MDOC grievance policy referred to by the Supreme Court in *Jones v. Bock* was the November 1, 2000, version, which did not require inmates to include in their grievances the dates, times, places and names of all those involved as the applicable directive at issue here does. *Jones*, 127 S. Ct. at 916. Therefore, I suggest that his claim is also not exhausted.

Defendants argue that Plaintiff's claim that Defendant Trombley opened legal mail from the Beals law firm on August 12, 2005 (Dkt. 10, ¶ 24, was not properly exhausted because it was not presented in grievance 996 and grievance 996 was the only grievance filed in August of 2005. (Dkt. 23 at 7.) I suggest that Defendants are correct and that this claim is not properly exhausted. (Dkt. 23, Ex. 2; Dkt. 26, Ex. 4 (grievance 996).)

    **2.**    **Grievance SRF-05-10-01282-28c ("1282")**

Grievance 1282 complains of an October 4, 2005 incident[5] where his legal mail was opened and a check was removed. (Dkt. 23, Ex. 3; Dkt. 26, Ex. 7). The grievance concedes that the "legal mail contained an adhesive sticker which stated: 'LEGAL MAIL - Opened in the SRF mailroom in error. Contents not removed or inspected. SRF Mailroom Staff.'" In addition, the grievance notes that a "post-it" sticker was on the outside of the envelope indicating that the "check was taken to the business office." (*Id.*) Plaintiff's Amended Complaint clarifies that the check was in the amount of $4,222.49 and was sent from the Schoolcraft County Clerk's Office. (Dkt. 10 ¶¶ 4-7.) Neither the grievance nor the instant Amended Complaint challenge the veracity of the statements from the mail room staff that the mail was not removed or inspected.

---

[5]However, the incident date on the grievance form is October 11, 2005.

9

The grievance also alleges that although Plaintiff requested and Defendant Kelly authorized several disbursements, as of October 7, 2005, at least one disbursement to Plaintiff's attorney had not been received. (*Id.*) It states further that Plaintiff then met with Defendant Kelly and he refused to look into the matter. (*Id.*) Defendants argue that the grievance was properly rejected because it "contained multiple issues [and] it does not raise any of the incidents/claims against Defendants Trombley, Taylor, or Kelly that are alleged in October 2005." (Dkt. 23 at 8.) MDOC policy does provide that a grievance may be rejected if it contains "multiple unrelated issues." MDOC PD 03.02.130(G). Plaintiff argues that he did name the individual defendants and that the issues raised in the grievance were related, i.e., related to the difficulties he experienced in items being or failing to be deposited and disbursed from his account. (Dkt. 26 at 17-18.) I note that only Defendant Kelly was named in the grievance.

I suggest that the issues regarding the legal mail which was opened and the failed monetary disbursements could be considered "multiple unrelated issues." *Smith v. Davis*, 218 Fed. Appx. 505, 506 (7th Cir. 2007)(affirming district court's conclusion that plaintiff failed to exhaust where prison grievance policy prohibited raising multiple unrelated issues and where grievance complained of various conditions in the disciplinary and administrative segregation units).

I further suggest that even if the merits of the claims were addressed, the claims should be dismissed for failure to state a claim under 28 U.S.C. 1915A. Mail from an inmate's attorney may be opened and inspected for contraband; however, prison authorities may not read the mail and must allow the prisoner to be present, upon request, if the envelope is marked as confidential. *Lavado v. Keohane,* 992 F.2d 601, 607-09 (6th Cir. 1993); *Wolff v. McDonnell*, 418 U.S. 539, 577, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974). Here, Plaintiff alleges that he had made such a request to be present and I assume that is true.

"[A]s a matter of law, mail from an attorney implicates a prisoner's protected legal mail rights." *Sallier v. Brooks*, 343 F.3d 868, 877 (6th Cir. 2003). On the other hand, mail from County Clerk's or Register of Deeds offices "do[] not implicate constitutionally protected legal mail rights [g]iven the nature of the county clerk's office and that there was specific indication to the contrary marked on the envelope..." *Id.* at 875. The mail at issue in this grievance was mail from the Schoolcraft County Clerk's office that was opened in error but was not read; instead, only a check was removed and taken to the business office for deposit. (Dkt. 23, Ex. 3; Dkt. 26, Ex. 7; Dkt. 10 ¶¶ 4-7.) Although the erroneous opening reveals negligence on the part of prison staff; Plaintiff has not alleged facts amounting to intentional conduct and Plaintiff has not challenged the prison official's affixed comments to the letter indicating the mail was opened in error and was not read. Mere negligence does not rise to the level of a constitutional violation under § 1983. *County of Sacramento v. Lewis*, 523 U.S. 833, 848-49, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998)("liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process"). Although the prison stamped the letter as "legal mail," there was no such indication made by the county clerk's office on the letter that would forewarn the prison mailroom staff. In addition, the mail itself concerned Plaintiff's father's estate and contained a disbursement from the same, rather than his own criminal or civil rights cases. (Dkt. 10 ¶ 26.) I suggest that the negligent opening of this mail may have been contrary to prison policy but does not implicate constitutionally protected rights. *Sallier, supra*. I am unaware of any constitutional right to timely disbursements from a prisoner's trust account and even if there were such a right, the allegation of negligence in the instant complaint is insufficient to state a constitutional violation. *Id.* Therefore, I suggest that even if the allegations in the grievance were considered, Plaintiff has failed to state a claim upon which relief can be granted so this claim should be dismissed. 28 U.S.C. § 1915A(b)(1).

### 3. February Grievances[6]

Defendants argue that the retaliation claim against Defendant Stoltenberg is not exhausted by any of the four February grievances. (Dkt. 23 at 9-10.) Defendants argue that grievances 220, 222, and 223 contain assertions that do not rise to the level of any violation of policy that is grievable. (Dkt. 23 at 9.) The allegations contained in these three grievances are that Plaintiff was denied expedited mail service, that he was scolded and that he was threatened of potential future retaliation making him "fearful of reprisals to come." (Dkt. 23, Ex. 4-6.) Plaintiff has not averred that he suffered any legal or other consequences from the lack of expedited mail service. *Contrast*, *Siggers-El v. Barlow*, 412 F.3d 693, 699-700 (6th Cir. 2005)(right of access to courts may be implicated where, because of failed disbursement to attorney, plaintiff's criminal appeal was not taken). I suggest that lack of expedited mail service alone does not rise to the level of a constitutional deprivation. I further suggest that verbal scoldings or verbal abuse or threats do not amount to a constitutional violation. *Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987).

I also suggest that Plaintiff's allegations that he was told he should "spell [Defendant's name] right" and that his conduct was "going to cause [him] problems for the rest of his life" even if said with a "snighed [sic] and sarcastic voice" while displaying "cold-glassy-glaring eyes" are not tantamount to a direct threat of future retaliation for exercising his constitutional rights. (Dkt. 23, Ex. 4,5, and 6.) I suggest that the alleged threats are not actionable because they were *de minimus* and unlikely to deter a person of ordinary firmness from exercising their constitutional rights. *Siggers-El*, 412 F.3d at 701.[7]

---

[6]Specifically grievances SRF 2006-02-0220-28d ("220"), 2006-02-0222-28b ("222"), 2006-02-0223-28b ("223"), and 2006-02-0226-17b ("226").

[7]I note that Plaintiff has not subjectively been deterred in filing grievances, exhausting his remedies and accessing the court.

I further suggest that Defendants correctly note that grievance 223 named only Sergeant Koch who is not a party to this action and thus, this claim may be dismissed for failure to exhaust. Consequently, I suggest that the claims raised in grievances 220 and 222 should be dismissed for failure to state a claim upon which relief can be granted and those in grievance 223 for failure to properly exhaust administrative remedies. 28 U.S.C. § 1915A(1)(b) and 42 U.S.C. § 1997e(a).

Defendants also argue that although grievance 226 "does exhaust a retaliatory misconduct claim against Stoltenberg, Plaintiff's complaint alleges that the retaliatory conduct was written on February 2, 2006, not February 16 or 17, 2006" as stated in grievance 226. (Dkt. 23 at 10; Ex. 7.) Therefore, Defendants argue that this claim is not properly exhausted.

I note that Plaintiff's amended complaint avers, in the general sections, that the retaliatory events took place on February 16 and 17, 2006, but erroneously refers to February 2, 2006, in the sections delineating the various claims against specific defendants. (Dkt. 10, ¶¶ 15-22 (general section); ¶ 39 (claim against Defendant Stoltenberg).) Plaintiff contends this February 2, 2006 date is a "clerical error." (Dkt. 26 at 16.) Just as the Court has assumed an erroneous date cited by the Defendants was a clerical error, see, *infra*, n. 4, I suggest the same latitude should be given to the Plaintiff. Where, as here, Plaintiff has cited the correct date in one portion of the complaint and an erroneous date in another, the court will assume the erroneous date was a mere clerical error that will not undermine an otherwise exhausted claim.

Accordingly, I suggest that grievance 226 is properly exhausted against Defendant Stoltenberg.

The Step II response to grievance 226 noted that Defendant Stoltenberg's comment that Plaintiff could file a grievance with "the Governor or anyone else who gave a shit" was "inappropriate" and that the "ADW of Housing will handle the incident administratively to ensure

13

staff maintains professionalism at all times." (Dkt. 23, Ex. 7.) However, it was also noted that "[this does not exempt Grievant from receiving a major misconduct [because] [g]rievant will not be permitted to be insolent to staff" by using profanity when he stated "go ahead and play whatever fucking games you want to" in response to Defendant Stoltenberg's inappropriate comments. (*Id.*) Plaintiff admits to having made the profane statement. (*Id.*)

I suggest that Plaintiff has not alleged facts that could support the elements of a retaliation claim because he was not engaged in protected conduct when he used profanity nor has he alleged that the adverse action was taken (at least in part) because of the protected conduct, i.e., that other prisoners using profanity are not written up for misconduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)(en banc); *Thomason v. Coble*, 100 Fed. Appx. 522, 523 (6th Cir. 2004)("If a prisoner violates a legitimate prison regulation, he is not engaged in constitutionally protected conduct, and cannot state a claim for retaliation."); *Washington v. Randall-Owens*, No. 06-12588, 2007 WL 2713749, *12 (E.D. Mich. Sept. 17, 2007)(finding no retaliation as a matter of law where after grievance filed, Plaintiff was given a major misconduct violation for having contraband in his cell because Plaintiff was not engaged in protected conduct and because Plaintiff could not allege any actual damages); *compare, Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007)(distinguishing *Thomason* because protected conduct and conduct that was subject of misconduct violation were two different actions). Accordingly, I suggest that Plaintiff has failed to state a claim upon which relief can be granted. 28 U.S.C. § 1915A(b)(1).

### 4. Conclusion

For all the reasons stated above, I suggest that the claims against all the named Defendants be dismissed for failure to exhaust or failure to state a claim upon which relief can be granted. 42 U.S.C. 1997(e); 28 U.S.C. 1915A(1)(b). In addition, I suggest that the John and Jane Doe

Defendants be dismissed for failure to identify and effectuate service upon them within the 120 days required under FED. R. CIV. P. 4(m) and because the Plaintiff has failed to state a claim against them under 28 U.S.C. 1915(A)(1)(b).

### III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

                                                      s/ *Charles E Binder*
                                                     CHARLES E. BINDER
Dated: November 30, 2007                            United States Magistrate Judge

### CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on Christine Campbell, and on Stephen Rusiecki by first class mail, and served on U.S. District Judge Rosen in the traditional manner.

Date: November 30, 2007                    By     s/Patricia T. Morris
                                                          Law Clerk to Magistrate Judge Binder